**WASHOE TRIBE OF NEVADA AND CALIFORNIA, et al.,
Plaintiff-Appellees,**

**v.**

**Joseph GREENLEY, et al., Defendants,**

**and**

**The State of Nevada, Appellants.**

**No. 80–4241.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 15, 1981.

Decided April 15, 1982.

As Modified on Denial of Rehearing and Rehearing En Banc July 15, 1982.

Harry W. Swainston, Deputy Atty. Gen., Carson City, Nev., for appellants.

Richard E. Olsen, Jr., Carson City, Nev., for plaintiffs-appellees.

Before SCHROEDER, NELSON and CANBY, Circuit Judges.

CANBY, Circuit Judge.

The State of Nevada seeks to appeal from a declaratory judgment and an injunction prohibiting two of its officials from enforcing State hunting laws and regulations against Washoe Indians hunting on the Washoe Pinenut Allotments.[1] The plaintiffs were the Washoe Tribe and two of its members. The Director and the Chief of Law Enforcement of the Nevada Department of Wildlife, as individuals and in their official capacities, were the defendants. The State of Nevada was not named as a party to the action. It did not intervene or otherwise enter an appearance in the dis-

trict court. The plaintiffs have filed a motion to dismiss the appeal on the basis that the state has no standing to appeal.[2] We agree and dismiss the appeal.

In the district court, the plaintiffs sought declaratory and injunctive relief against the Department of Wildlife officials. Basing their arguments on federal preemption and tribal sovereignty, the plaintiffs asserted that the State of Nevada had no jurisdiction to regulate hunting by tribal members on the Washoe Pinenut Allotments. The district court issued the requested injunction, permanently enjoining the named officials, their successors in office, and those acting in concert with them or under their direction and control, from enforcing the laws and regulations of the State of Nevada against members of the Washoe Tribe in connection with their hunting on the Washoe Pinenut Allotments. The injunction also permanently enjoined those parties from interfering with or infringing upon the exercise of the powers of self-government of the Washoe Tribe in its regulation of hunting by its members on the allotments.

In its declaratory judgment the court held in part:

The Washoe Pinenut Allotments are not subject to the jurisdiction of the State of Nevada with respect to hunting activities of members of the Washoe Tribe within such allotments, and ... the State of Nevada has no jurisdiction to directly or indirectly enforce its hunting laws or regulations against members of the Washoe Tribe of Nevada and California in connection with the hunting activities of such members within the Pinenut Allotments.

■ The individual defendants filed no notice of appeal, but the State of Nevada did, and now argues that it should be permitted to maintain the appeal despite the

1. The Washoe Pinenut Allotments are lands located in two counties of Nevada. The lands were never part of a reservation, but rather were public domain prior to their allotment. Pursuant to the General Allotment Act of February 8, 1887, 24 Stat. 388, *as amended by* Act of February 28, 1891, 26 Stat. 794, 25 U.S.C. §§ 331–358, these lands were allotted to individual Indians to be held in trust by the United

States for their sole use and benefit. The allotments continue to be held in trust, some for the sole use and benefit of individual Washoe allottees and some for the Washoe tribe.

2. The motion to dismiss was denied by a motions panel of this court, with the qualification that the merits panel was free to reopen the issue. Order of November 6, 1980.

fact that it entered no appearance in the district court.[3] For reasons rooted in the eleventh amendment and its judicial interpretations, we cannot accept this argument.

■ The general rule is that one who was not a party of record before the trial court may not appeal that court's judgment. *United States v. Conforte,* 643 F.2d 641, 643 (9th Cir. 1981); *Securities & Exchange Commission v. Lincoln Thrift Association,* 577 F.2d 600, 602 (9th Cir. 1978). The State contends, however, that it was so clearly a participant and its interests were so clearly affected by the proceedings below that it may appeal despite its lack of status as a formal party. In *United States v. Conforte, supra,* this court reviewed the instances in which non-parties had been allowed to appeal, and stated:

> [I]n nearly every case where such an appeal was allowed to proceed, two elements were presented: (1) the appellant had participated in the district court proceedings even though not a party, and (2) the equities of the case weighed in favor of hearing the appeal.

643 F.2d at 643. The State argues with superficial plausibility that it meets the first requirement and, with less apparent force, that it also meets the second. We believe, however, that the posture of this case precludes a lenient application of the *Conforte* formula if, indeed, it may be applied at all.

The eleventh amendment forbids unconsented suits against a state in federal court. The plaintiffs accordingly brought this action in the tradition of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which permits injunctive relief in federal court against state officers carrying out official duties in violation of the Constitution. *See Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 156 n. 6, 98 S.Ct. 988, 993 n. 6, 55 L.Ed.2d 179 (1978). As is customarily the case, the state furnished the legal defense

for the state officials. The notion that this type of an injunction suit against state officials is not one against the state is a legal fiction. *See Spicer v. Hilton,* 618 F.2d 232, 235–237 (3d Cir. 1980); L. Tribe, American Constitutional Law § 3–38 (1978); K. C. Davis, *Suing the Government by Falsely Pretending to Sue an Officer,* 29 U.Chi.L. Rev. 435, 435–37 (1962); L. Wolcher, *Sovereign Immunity and the Supremacy Clause: Damages Against States in Their Own Courts for Constitutional Violations,* 69 Cal. L.Rev. 189, 212–13 (1981).

Nevertheless, the fictional distinction is rigidly observed. If the State had been named as a party defendant without its consent, the district court would have had to dismiss it from the litigation. *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam). Indeed, the individual defendants in the present case contended in district court that the State was an indispensable party. Had that contention been correct, it would have followed inevitably that the entire action would have had to be dismissed, as the defendants sought.

In the face of these stern reminders of the vitality of the eleventh amendment and the continued observance of the fictional distinction between the state and its officers, we do not feel free to ignore the distinction and hold that the litigation below was "really" one against the state from which the state can appeal. Nor can we hold that the State's indirect participation entitles it to appeal when its direct participation would so clearly have been subject to eleventh amendment restrictions.

In addition we find no equities in favor of permitting an appeal by the State. The State did not intervene below when it clearly could have. Fed.R.Civ.P. 24. *Pellegrino v. Nesbit,* 203 F.2d 463, 465–66 (9th Cir. 1953), *cited favorably in United Airlines v. McDonald,* 432 U.S. 385, 395–96 n. 16, 97 S.Ct. 2464, 2470 n. 16,

---

**3.** We do not accept the State's argument that appearances made on behalf of the state officials constituted appearances made on behalf of the State of Nevada. The attorney general had a statutory duty to appear to represent the officials and the appearance was made in satisfaction of that obligation. As a matter of record, the attorney general appeared on the officials' behalf.

53 L.Ed.2d 423 (1977); *Legal Aid Society of Alameda County v. Brennan*, 608 F.2d 1319, 1328 (9th Cir. 1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980). By not becoming a party, the State avoids any danger of being held in contempt for violation of the district court's injunction. *Alabama v. Pugh*, 438 U.S. at 782, 98 S.Ct. at 3057. It also avoided any possible question whether its intervention would have the effect, under state law, of waiving the State's immunity, *Skokomish Indian Tribe v. France*, 269 F.2d 555, 562 n. 19 (9th Cir. 1959), which waiver would have defeated the contention of the individual defendants that the entire litigation should be dismissed on the ground that the State was an unconsenting and indispensable party. Whether these considerations in fact contributed to the State's decision not to intervene is unknown, but it is clear that the State has come forth with no affirmative reasons to justify its decision not to enter a formal appearance in the district court and to show why it should now be allowed to appeal in its own name. We therefore cannot say that the equities favor the entertainment of its appeal.

Appeal dismissed.